## THE STATE, WILLIAM DUNN, PROSECUTOR, THE OVERSEER OF THE POOR OF SOUTH AMBOY.

1. On appeal to the sessions, in matter of bastardy, the sessions do not act as a court of error, but may re-try the cause and vary the order to conform to the evidence and exigencies of the case.
2. This court, on *certiorari* to the sessions, will not reverse either the sessions or the justices, because it does not appear upon the order of the justices when, where, or before whom the venire was returnable, nor the names or number of the jurors, nor whether the jury were sworn, or by whom, nor whether any witnesses were sworn before the jury, or by whom, nor states the verdict of the jury.
3. Every intendment will be made in favor of an order of two justices.
4. This court will not set aside the proceedings of two justices, upon *certiorari* to the sessions, without first setting aside the order of the sessions.

---

On *certorari* to the Middlesex Sessions. In matter of bastardy.

In this case, an order had been made by two justices of the county, in which the prosecutor was adjudged to be the putative father of a bastard child, and was ordered to pay to the overseers of the poor of the township of South Amboy the sum of twenty dollars, for lying-in expenses and maintenance of the child, up to the time of making the order, and also one dollar a week for said time, and so long as said child should remain chargeable.

From this order the prosecutor appealed to the sessions, which court, after hearing, ordered the father to pay one

hundred and thirty-five dollars, for the lying-in expenses and maintenance, to the nineteenth of May, 1864, and also to pay one dollar per week to the overseers of the poor, toward the support of the child so long as it should be chargeable. To remove and set aside this order and the proceedings of the sessions was the object of the *certiorari*.

The reasons assigned appear in the opinion of the court.

The case was heard before Justices VREDENBURGH, ELMER, and WOODHULL.

For the prosecutor, *A. V. Schenck.*

For the township, *G. B. Adrain.*

The opinion of the court was delivered by

VREDENBURGH, J. This *certiorari* is directed to the Quarter Sessions of Middlesex, commanding them to send up the order lately made by two justices of the peace of said county, and also the order of the said sessions on appeal, adjudging the prosecutor to be the putative father of a bastard child, together with all matters touching the same.

It is now moved to set aside all these proceedings, those of the justices, as well as of the sessions.

The first reason assigned is, that the order of the sessions is an original order. But the case shows that the order of the sessions is one made on appeal, and cannot, therefore, be an original one. The only case I have found directly on this question is that of *The State* v. *Price*, 6 *Halst.* 143. But this is evidently a case originating in the sessions, and therefore inapplicable to the case before us.

The next reason assigned is, that the order of the sessions is variant from that of the two justices. The only difference, as appears by the inspection of the two orders, is, that on the seventh of October, 1861, the two justices ordered, that the father, as well for the better relief of the township, as for the sustenance and relief of the child, should forthwith,

upon notice, pay to the overseers of the poor twenty dollars, for and towards the lying-in expenses of the mother, and the maintenance of the child up to that time, and also one dollar per week from the said time, for and during so long as he should be chargeable. Whereas, the order of the sessions, made on the nineteenth of May, 1864, orders the father to pay the sum of one hundred and thirty-five dollars, for the lying-in expenses of the mother and maintenance of the child, to the nineteenth of May, 1864, aforesaid, and also pay to the overseers one dollar per week from the said nineteenth of May, 1864, for and towards the maintenance of the child so long as it should be chargeable.

It will be perceived, by a little calculation, that the sum awarded by the two justices, viz., twenty dollars, and one dollar per week from the date of their order, October 7th, 1861, to the nineteenth of May, 1864, the date of the order of the sessions, is one hundred and fifty-eight dollars, while the sum awarded by the sessions on the nineteenth of May, 1864, is only one hundred and thirty-five dollars, so that the only difference between the two orders is, that the award of the sessions is twenty-three dollars less than that of the two justices, and we are asked to set aside the order of the sessions for this reason. The father contends, that all the sessions can do is to affirm or reverse, and that this variance is therefore fatal.

To this, I think, several answers may be given. In the first place, this variance was procured by the father, on appeal, and on his own motion, and he should not take advantage of his own act.

In the second place, the objection assumes, that the sessions are a court for the correction of errors only, whereas, they are a court for the trial of causes on appeal, and bound by law to re-hear the evidence, and to give such judgment as law and the evidence demand. Their very constitution as a court of appeals requires them to vary, if they conceive the evidence demands it. An appellate court cannot be bound by the conscience of the inferior tribunal, but only by its own.

In the third place, the statute, *Nix. Dig.* 64, § 1,* expressly recognizes, that on appeal, the whole matter is within the judicial discretion of the sessions. This provides, that after the order made by the two justices, if the father shall not pay, he shall be sent to jail, unless he give security to perform or appear at the next sessions, and also to abide *such order* as the sessions shall take in that behalf; and if they take no *other* order, then to perform the order of the two justices. This act, so far from treating the sessions as a court for the correction of errors only, or limiting their powers to a mere affirmance or reversal, recognizes *any* order made by them on the subject matter of better relief of the township; and, of course, upon appeal to settle the amount of relief proper in each case, and upon this subject they must, of course, be governed as the evidence appears before them, otherwise the trial before the sessions is a mere mockery.

But again : this prosecutor bound himself, by his recognizance before the two justices, to abide by and perform *such order* as the sessions *might make,* and not such order of affirmance or reversal as they might make. He is estopped by his own recognizance from raising here any such question as this. Nay, more : by the very terms of the recognizance, the session are *not* to make the same order as the two justices. They cannot make a mere affirmance. They must make an order of their own, for, by the very terms of the act, if they make "*no other order*" than the justices, the defendant is bound to perform the order of the justices. It has always, from the passage of the original act of the eighteenth *Elizabeth,* been understood that, on appeal, it was not only in the power of the sessions, but that it was their duty to vary the original order, in their discretion. Thus, in *Burn's Justice, p.* 201, the author, in commenting upon a case cited, remarks : "If the justices make order, the sessions, on appeal, undoubtedly may alter it, and that seemeth the regular course." The case of *Tyrell* v. *Woodbridge,* 3 *Dutcher* 416, is to the same effect.

From very early times, the sessions had power to vary

* *Rev., p.* 73, § 19.

State, Dunn, pros., v. Overseers of the Poor of South Amboy.

the order of two justices, in increasing or diminishing the amount awarded by the two justices, and their variations, too, sometimes took rather a wider range than the one now before this court. It is curious to remark, that although the English statutes, as well as our own, give the father a right to appeal to the sessions, yet that none of them, so far as I can discover, either in England or in this state, gave the sessions the power to *try* it. They got that power from their ancient jurisdiction over kindred subjects. Bastardy was an institution of much higher antiquity than the statutes of Elizabeth, and when, under those statutes, a party appealed from the justices to the sessions, he took the risk, not only of having the order of the justices increased in amount, but also such other order as the sessions might make, by virtue of the power they had before the statutes of Elizabeth. Before the statutes of Elizabeth, the sessions were constantly in the habit of fining the father for the use of the poor, and also of whipping, by way of developing the moral sense. So, in our own state, the sessions fined and whipped until our act of 1795, corresponding to the statutes of Elizabeth, was passed, when here, like it did in England after the statutes of Elizabeth, it fell into disuse, not from failure of power in the sessions, but from considerations of humanity and the advancing spirit of the age. Thus, I find the justices of Monmouth, in general session, until 1795, relieving the township by fining the mother and putative father for the use of the poor, and in two cases in 1701, varying their order in one case by adding ten lashes on the bare back for having a white child, and thirty lashes in the other for having a mulatto one. So that the prosecutor should deem himself fortunate that the sessions, instead of diminishing his fine, had not enlivened the proceedings by inserting some of their old variations.

The next reasons for setting aside these orders are, that it does not appear, by the order of the two justices, when, where, or before whom the venire was returnable, nor the names or number of the jurors, nor whether the jury were

sworn, or by whom, nor whether any witnesses were sworn before the jury, or by whom, nor that said order states the verdict of the jury. Are any of these reasons sufficient to set aside either of these orders?

First, as to the sessions. None of these things are jurisdictional facts, and therefore the duty of the sessions was not to reverse or affirm as a court of error, but to re-try the cause, and give such judgment as the justices ought to have given. The order of the justices must show their jurisdiction, and having shown that, all the rest is procedure. If the justices have no jurisdiction, their proceedings are void, and the defendant may prosecute for any attempted enforcement, or he may bring *certiorari* directly to the justices, and have their order reversed, but then there can be no appeal.

But if the errors of the justices are mere errors of procedure, he must elect one of two alternatives. He must either *certiorari* and reverse for these errors of procedure, or appeal to the sessions and re-try his cause upon the merits. But he cannot take both courses. If he appeals, the sessions have jurisdiction, and their order supersedes and nullifies the order of the justices.

So here, if these alleged errors are only errors of procedure, the order of the sessions is in force, and the orders of the justices nullified, and upon *certiorari* this court can only reverse for the errors of the sessions.

Otherwise, this anomaly would arise, that this court would reverse the sessions, not for their error, but for the errors of the justices—that is, reverse one tribunal, not for its own error, but for the errors of another.

Now, are any of these alleged errors of the justices such as go to their jurisdiction? Clearly not. The only jurisdictional facts necessary to appear upon their order are, *first*, that, a bastard child is born; *second*, that it was chargeable on the township; *third*, that proper application has been made for relief; and, *fourth*, that the justices have, in fact, adjudged the defendant to be the father.

Take these alleged errors most strongly, admitting that it does not appear that any jury was had, although demanded, yet it was only an error of procedure. The justices had a right to make the order; the jury is only one of their modes of inquiry. Their order would be reversible by direct *certiorari* to them from this court, but the defendant could not appeal and then bring *certiorari* to reverse the proceedings of the justices.

But again, upon inspecting the order of the justices, it does, I think, appear by intendment when, where, and before whom the venire was returnable, and that the jurors were sworn, and by whom, and that witnesses were sworn before the jury, and by whom, and what the verdict was. This order does state that "William Dunn hath appeared before us, and denied that he was the father of the said child, and demanded a trial by jury; and we, the said justices, did issue our venire for a jury of twelve men; and the said Dunn being adjudged as the reputed father of the said bastard child by the said jury, we, therefore, upon the verdict of the said jury, as well as upon the oath of the said mother, as otherwise, do hereby adjudge him, the said Dunn, to be the reputed father of the said bastard child, and, therefore, we do order," &c. It has been long settled, that this court will make every intendment in favor of an order in bastardy, by two justices. Thus, Lord Ellenborough, in the case of *The King* v. *Clayton*, 3 *East* 59, says: "The law has been settled by so strong a series of decisions, from the time of Lord Holt to a very recent period, that every intendment shall be made in favor of an order of justices, that we must see whether by any intendment which can be made, this present order can be supported." This doctrine has been repeatedly recognized in our own state reports. Now, upon inspecting this order of the two justices, can we not see that all these matters complained of appear by intendment. Does it not appear that the venire was returnable before the two justices, on the day of the trial, and at the place where the prosecutor and all parties appeared, and tendered themselves

ready for trial; and also that the jury were sworn, and before the said justices, and that one or more witnesses were sworn by the justices, before that jury, and the verdict was against the prosecutor; that he was the reputed father, and that the number of the jury was twelve. Everything that is complained of, appears by intendment upon the face of the order. The facts taken by intendment in the case, *The King* v. *Luffe*, 8 *East* 193, where all the justices give their opinions *seriatim*, I think, is much stronger than this now before the court.

What law, or principle of law, requires the names of the jurors to appear upon the face of the order? Has such an order ever been seen, or any order ever quashed by this court, or any other, for the want of such appearance? But again, if it were necessary for these things to appear to have been done before the two justices, might they not appear by other parts of the record of the proceedings of the two justices, other than the order? We cannot say from this case, that the justices did not keep such additional record, and that all these matters complained of did not certainly appear upon such record; and if they did appear so by the rest of the record to the sessions, how could the sessions quash for these reasons complained of? Nay, more, if they did not appear by the record, and the prosecutor had objected, had not the sessions the power, and would it not be their duty, to call upon the two justices to certify as to the jury, or could not these matters have been proved before the sessions *aliunde*.

But, again, this prosecutor appealed from the two justices to the sessions, and filed there, among the papers in the cause, the original venire, with the names and numbers of the jury, and also filed as among the papers in the cause, what purported to be the full record of the justices, in which all these matters complained of are explicitly set out in terms, which record was received without objection, and used as such on the trial of the appeal. How, then, could it be error in the sessions for not, of their own mere motion, quashing the proceedings of the justices for these technical matters not

appearing in their order, when the prosecutor himself brings up and spreads before them, as proceedings in the cause, what he alleges, by so bringing up and producing to the court, to be the record of the justices, and by which it appears, in express terms, the justices did everything which he now here, for the first time, sets up they did not do.

But supposing all these things to be otherwise, could it possibly be error in the sessions to decline to quash the order of the two justices, because these matters complained of did not appear upon the order of the two justices. This was a proceeding before the sessions, by way of appeal, which, from its very nature, requires a new trial upon the merits, and where the sessions ought not to reverse, where it appeared that the justices had jurisdiction of the subject matter, unless the error was such as prevented a fair trial before the sessions, on the merits of the case. *Martin* v. *Thompson*, 5 *Halst.* 142.

Now, it was a matter of entire indifference, so far as the trial on the merits of the case before the sessions was concerned, whether any or all these matters complained of did or did not appear upon the face of the order of the two justices. Suppose this had been an appeal to the pleas, from a judgment in the court for the trial of small causes, would this court, on *certiorari* to the pleas, reverse the pleas, because they had not reversed the court for the trial of small causes, on account of these omissions in the transcript of the justice? Instead of the sessions quashing these proceedings, for these alleged errors of the justices, it is their duty to correct them, by re-trying the case upon its merits. *King* v. *Clayton*, 3 *East* 62; *Tyrell* v. *Woodbridge*, 3 *Dutcher* 416. In *Vannoy* v. *Givens*, 3 *Zab.* 201, Justice Carpenter says, we cannot reverse for errors of the justice, for it is not his judgment, but judgment of the appellate court, that is before us for review. In *Hendricks* v. *Craig*, 2 *South.* 569, the court say : "It was the judgment of the court of Common Pleas which was removed, and the court could not look beyond it to the proceedings of the justice, in order to find in them an objection, which had done the defendants no injury." In

the *State* v. *Bidleman*, 2 *Harr.* 20, the court say : " It is true, as the defendant contends, that this court should make such order as the court below should have made." But this means such order as the sessions should have made after a hearing upon the merits.

The case cited by the prosecutor, of *The Overseers of Princeton* v. *The Overseers of South Brunswick*, 3 *Zab.* 179, does not affect this view of the case. That was a *certiorari* to set aside the order of the sessions on appeal, in the matter of a removal of a pauper, which order of the sessions had set aside the order of removal made by two justices. This court affirmed the proceedings of the sessions, and rightly, because it did not appear by the proceedings before the two justices that they had jurisdiction of the subject matter. Chief Justice Green says : " The radical defect of the order of the two justices is, that it does not appear that the persons making it had any legal authority to act in the premises." We conclude that there is no error shown us here, which would justify this court in setting aside this order of the sessions.

But it is urged, in the next place, that although this court cannot set aside the proceedings in the sessions, yet that they ought to set aside the order of the two justices for these alleged defects therein. There are many cases, both in the king's bench and in this court, where the proceedings before the justices have been quashed for defective orders, where there has been no appeal. But no case, I apprehend, can be found where this court have been constrained, by force of law, to affirm the proceedings on appeal, and yet quash the proceedings before the two justices.

The order on appeal *ipso facto* nullifies the order of the two justices. As long as the proceedings of the appellate court stand, there is no order of the two justices. The only way to revive the order of the two justices, is to set aside the proceedings of the sessions, and then this court may quash the proceedings of the two justices. If the two justices had not jurisdiction, what possible legal effect can

result from setting aside the order of the justices, while the order on appeal is permitted to stand. Such a proceeding would only be nullifying what is already a nullity. *Vannoy* v. *Givens,* 3 *Zab.* 202 ; 3 *East* 62 ; *State* v. *Bidleman,* 2 *Harr.* 22.

The other reasons assigned do not appear to be verified by the record.

Let the proceedings be affirmed, with costs.

Justices ELMER and WOODHULL concurred.